AO 106 (Rev. 04/10) Application for a Search Warrant

AUTHORIZED AND APPROVED/DATE: _____

# UNITED STATES DISTRICT COURT

### for the

### Western District of Oklahoma

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Premises known as 10029 SW 23rd Street, Yukon, )
Oklahoma 73099, the surrounding curtilage, and any )
vehicles, garages, and outbuildings thereon )

Case No. M-23 **896** -SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C § 846 | Drug Conspiracy |
| 21 U.S.C. § 841(a) | Possession with Intent to Distribute and Distribution of Controlled Substances |

The application is based on these facts:

See attached Affidavit of FBI SA Marc Jones

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Marc Jones, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/31/23

*Judge's signature*

City and state:  Oklahoma City, Oklahoma

Suzanne Mitchell, U.S. Magistrate Judge
*Printed name and title*

## WESTERN DISTRICT OF OKLAHOMA
## OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA    )
                             )
COUNTY OF OKLAHOMA )

### <u>AFFIDAVIT</u>

I, Marc Jones, Special Agent with the Federal Bureau of Investigation (FBI), having been duly sworn, depose and state as follows:

1.    I have been a Special Agent with the FBI since April 2021.  I am currently assigned to the Oklahoma City Division, where I am assigned to the Criminal Enterprise Squad, which is responsible for investigating street gang and drug-related offenses.  Since becoming a Special Agent, I have been trained in a variety of investigative matters which involved the unlawful distribution of narcotics in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Prior to joining the FBI, I was a Child Protective Services Specialist, from October 2015 to March 2021.  In that capacity, I investigated allegations of child abuse and/or neglect and reported the findings of my investigations to the District Attorney's Office. Through my training and experience, I have become familiar with the methods and operation of drug distributors, including their common organizational structures, use of violence, methods of distributing, storing, and transporting drugs, and methods of collecting and laundering drug proceeds. As part of my investigative experience as an FBI Special Agent, I have been the affiant in multiple Title III wire intercept

1

affidavits, executed search and arrest warrants, conducted physical surveillance, coordinated controlled purchases with confidential sources, analyzed records documenting the purchase and sale of illegal drugs, and spoken with informants and subjects, as well as other local and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs.

     2.    The facts set forth below are based upon my own personal observations, reports and information provided to me, the Oklahoma City Police Department (OCPD), or the FBI by other law enforcement agents or government agencies, and other documents obtained during the course of this investigation. All of the below-described dates, times, and drug and currency amounts are approximate.

     3.    The information contained in this Affidavit is submitted for the limited purpose of establishing probable cause to secure search warrant for 10029 SW 23rd Street, Yukon, Oklahoma 73099 (the **SUBJECT RESIDENCE**), as described further in **Attachment A** (physical description), to include the surrounding curtilage and any vehicles, garages, or outbuildings located thereon, for evidence of violations of 21 U.S.C. § 841(a)(1) (manufacturing, possessing, distributing and selling of controlled substances) and 21 U.S.C. § 846 (drug conspiracy), as described further in **Attachment B** (description of items to be seized). Since this Affidavit is being submitted for the limited purpose of securing

a search warrant, I have not included each and every fact known to me concerning this investigation.   I have set forth only the facts that I believe are necessary to establish probable cause for the requested warrants.

## BACKGROUND REGARDING DRUG CASES

4.      As discussed previously, based on my training, experience, and consultation with other seasoned drug investigators, I am familiar with the *modus operandi* of drug traffickers.   Based on my training and experience, as well as my participation in numerous drug-related investigations, I know the following:

a)      I am aware that drug dealers frequently keep assets, records, and documents related to their drug distribution organizations, and monies derived from the sale of illegal drugs, in their own residences, as well as in safe houses where they are not easily detectable by law enforcement officials conducting investigations.   Further, I am aware that these individuals will frequently maintain these houses in the name of other individuals, also to avoid detection by law enforcement agencies;

b)      I am aware that even though relevant assets, telephones, and properties are often held in alias or third-party names, drug dealers continue to use and exercise dominion and control over them;

c)      I am aware that drug dealers often maintain on-hand quantities of currency and drugs in order to finance their ongoing drug business;

d)      I am aware that drug dealers maintain books, records, receipts, notes,

3

ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale and distribution of controlled substances, even though such documents may be in code.  It is particularly common that individuals engaged in drug trafficking will keep ledgers related to their illegal activity because drug dealers commonly "front" drugs (provide controlled substances on consignment) to their clients, and are frequently "fronted" drugs by their own sources of supply as part of their dealing operations;

e)     I am aware that the aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where the drug dealers have ready access to them, i.e., homes, automobiles businesses and safe houses, and that the most common place for these items to be located is at their primary residence;

f)     I am aware that drug dealers will frequently keep records, notes, ledgers, contact lists, and other evidence of their drug trafficking on cellular phones, and that they often keep such cellular phones on their person or in the properties that they control.  Further, I am aware that drug dealers will often have multiple cellular phones, and will frequently use more than one cellular phone to help conduct their drug trafficking.  I am also aware that drug dealers will use computers and tablets to further their drug trafficking through the use of digital communication, including, but not

4

limited to, e-mail and instant messaging;

g)      I am aware that it is common for drug dealers to conceal contraband, proceeds of drug sales, and records of drug transactions, drug sources and drug customers, in secure locations within residences, garages, storage building, safes, and safety deposit boxes for ready access, and also to conceal such items from law enforcement agencies;

h)      I am aware that when drug dealers acquire large sums of proceeds from the sale of drugs, they attempt to legitimize their profits;

i)      I am aware that to accomplish these goals, drug dealers utilize, among other things, banks and their attendant services, securities, cashier checks, money drafts, letters of credit, brokerage houses, real estate companies, shell corporations, and business fronts;

j)      I am aware that drug dealers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates in the drug dealers organization, even if said items may be in code;

k)      I am aware that drug dealers commonly take photographs (or cause photographs to be taken) of themselves, their associates, their property and their products, and that these dealers usually maintain these photographs in their possession and at their residence;

l)      I am aware that firearms are commonly used by drug dealers to

protect their inventory and currency.

## PROBABLE CAUSE

5.      Special Agents and Task Force Officers (TFOs) of the FBI are currently conducting a joint investigation targeting Carlos Angel Villanueva (VILLANUEVA)—whom law enforcement believes to be distributing cocaine in the Oklahoma City area.   The investigation into VILLANUEVA began in September of 2022 when a confidential human source (CS1) informed the FBI that VILLANUEVA was attempting to sell kilogram-sized quantities of cocaine in Oklahoma City.   Additional investigation allowed law enforcement to identify VILLANUEVA and locate his primary residence (10029 SW 23rd St., Yukon), the **SUBJECT RESIDENCE**.   VILLANUEVA has owned this residence since January 2022 and lives at the residence alone.   This has been confirmed by physical and electronic surveillance.

6.      Continued surveillance on the **SUBJECT RESIDENCE** showed multiple different individuals who would arrive, stay for a brief amount of time, and then depart, often times carrying a bag or an item in their hand that they did not carry into the residence, or carrying a bag that appeared to be fuller than it was when the individual entered the residence. Based on my training and experience, these interactions closely resemble a customer picking up drugs from a supplier.

7.      An example of one such interaction took place on June 5, 2023 when

6

Luis Alonzo Hernandez Dominguez[1] arrived at the **SUBJECT RESIDENCE**. At approximately 8:24 p.m., HERNANDEZ entered the residence carrying a backpack. At approximately 8:29 p.m., HERNANDEZ exited the residence carrying the same backpack although it appeared to be fuller when he exited than it did when he entered. Investigators have observed numerous events like this involving HERNANDEZ, VILLANUEVA, and the **SUBJECT RESIDENCE**. On some occasions, HERNANDEZ would arrive driving an OG&E truck and when he exited the residence he would place an item in the locked tool box in the bed of the OG&E truck before departing. Investigators have confirmed with OG&E that when HERNANDEZ was at the **SUBJECT RESIDENCE** it was not in an official OG&E capacity.

8.      Additionally, on October 28, 2023, investigators observed an exchange that closely resembled that of a drug exchange. At approximately 1:19 p.m., VILLANUEVA exited the **SUBJECT RESIDENCE** with an object in his hand which he placed in the trash bin closest to the garage door. He then entered his black Chevrolet truck and departed. At approximately 1:54 p.m., a grey sedan arrived at the **SUBJECT RESIDENCE** and parked in the street directly in front

---

[1]      HERNANDEZ was identified in early 2023 when he was observed arriving at the **SUBJECT RESIDENCE** on multiple occasions driving an Oklahoma Gas and Electric (OG&E) truck. Through a subpoena, investigators were able to determine that HERNANDEZ was the driver of the OG&E truck that arrived at the **SUBJECT RESIDENCE** on multiple occasions.

of the house.   At approximately 2:03 p.m., VILLANUEVA returned and parked his truck in the driveway. VILLANUEVA exited the vehicle and retrieved an item from the bottom of the same trash bin he was seen placing something in earlier that day.   He placed the item in his pocket and at 2:04 p.m., he entered the grey sedan. At approximately 2:07 p.m., VILLANUEVA exited the grey sedan and returned to his truck. Both vehicles then departed. Based on my training and experience, I believe that VILLANUEVA left drugs in the trash bin for the customer in the grey sedan in the event that the sedan arrived at a time when VILLANUEVA was unable to be at the **SUBJECT RESIDENCE**. However, when the sedan did arrive, VILLANUEVA was in the area of the **SUBJECT RESIDENCE**, so he met the sedan at the house, retrieved the drugs from the trash bin, and then provided it to the driver of the sedan in front of the **SUBJECT RESIDENCE**.

9.    Most recently, on October 30, 2023 investigators observed a drug transaction take place at the **SUBJECT RESIDENCE**. At approximately 12:57 p.m., a white Mercedes Benz bearing Oklahoma tag ALQ-069 arrived at the **SUBJECT RESIDENCE** and parked in the driveway.   The driver, later identified as Deston Oneal Miller (MILLER), exited the vehicle and approached the front door.   The garage door then opened, and MILLER entered the **SUBJECT RESIDENCE** through the garage.   MILLER did not take anything into the residence. At approximately 1:17 p.m., MILLER exited the residence,

retrieved what appeared to be a cigarette, and then returned to the garage. MILLER was seen leaning on the back of VILLANUEVA's black Chevrolet pickup truck and appeared to be smoking a cigarette. At approximately 1:20 p.m., MILLER placed an item in the white Mercedes and returned to the residence, and the garage door closed after him.  At approximately 2:08 p.m., MILLER exited the **SUBJECT RESIDENCE** carrying a red and white bag.  He placed the bag in the rear passenger area of the white Mercedes and departed the **SUBJECT RESIDENCE**.

10.    Surveillance units followed MILLER who was ultimately stopped by the OCPD due to a traffic violation.   MILLER did not have a valid driver's license or vehicle insurance.   OCPD conducted a search of the Mercedes incident to MILLER's arrest for lack of a driver's license or insurance verification. Law enforcement discovered a large package inside the same red and white bag MILLER was carrying when he exited the **SUBJECT RESIDENCE**. The package was wrapped numerous times in plastic wrap and had a hard plastic coating around it.   Once the contents of the package were accessed, investigators discovered a large amount of a white powdery substance.   That substance field tested positive for cocaine and had a total package weight of 2.6575 lbs.

11.    Based on my training and experience and the events during this investigation, as put forth in this affidavit, I believe that VILLANUEVA is a part of a drug trafficking organization and is involved in the distribution of cocaine

9

within the Western District of Oklahoma. Moreover, based on my training and experience as well as the events outlined in this Affidavit, I believe that VILLANUEVA is storing the cocaine and the fruits and instrumentalities from his cocaine distribution at the **SUBJECT RESIDENCE**.

CONCLUSION

12.    Based on the foregoing, I respectfully submit that there is probable cause to believe that evidence relating to violations of 21 U.S.C. §§ 841(a) and 846 will be found at the **SUBJECT RESIDENCE**.   I therefore respectfully request issuance of a search warrant for the **SUBJECT RESIDENCE** (as set forth in **Attachment** A) based on the above-mentioned facts.

**FURTHER, YOUR AFFIANT SAYETH NOT.**

MARC JONES
SPECIAL AGENT
Federal Bureau of Investigation

Sworn to and subscribed before me this 31st day of October, 2023.

SUZANNE MITCHELL
United States Magistrate Judge

## Attachment A

### PROPERTY TO BE SEARCHED

### 10029 SW 23rd Street, Yukon, Oklahoma 73099

### (SUBJECT RESIDENCE)



10029 SW 23rd Street, Yukon, Oklahoma 73099 is a single-story residence. The SUBJECT RESIDENCE is located near the corner of SW 23rd Street and SW 25th Street in Yukon, Oklahoma. The exterior of the residence is constructed of brown brick. There is one large white garage door in the driveway and there are numerous surveillance cameras installed around the exterior of the residence. The roof has dark colored shingles. There is a paved walkway leading from the driveway to the front door.

**Attachment B**

## ITEMS TO BE SEIZED

The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a) and 846, which seizure is limited to those individuals reasonably related to or directly involved in said violations, namely:

1. Items used in the illegal distribution of controlled substances, including, but not limited to, scales, food supplements used for diluting illegal drugs, baggies, spoons, mirrors, straws or other utensils used in the packaging or use of illegal drugs. Also, items typically associated with illegal drug distribution, including firearms, ammunition, silencers, and receivers.

2. Documents, records, or materials related to the distribution of illegal drugs, including, but not limited to: ledgers, address books, telephone books, telephone bills, telephone records, rent receipts, rental car agreements, mini-storage receipts and keys, cellular telephone agreements, bills and receipts related to cellular telephones, and any property and/or U.S. currency being proceeds of or related to the distribution of illegal drugs. Also ledgers containing quantity of drugs possessed, ledgers of money owed to the suspects for drugs they have provided to co-conspirators, ledgers of money owed by the suspects to their suppliers, transportation and distribution instructions for the drugs being sold, and other types of documentation regarding the sale of drugs.

3. Financial documents evidencing the illegal distribution of controlled substances, including, but not limited to: bank statements, bank deposit slips, canceled checks, money orders, money order receipts, wire transfer receipts, stored value cards, handwritten notes depicting monies owed for illegal controlled substances, documents showing purported income, and any other evidence showing monetary records of the illegal distribution of controlled substances.

4. Documents, records, or materials related to the laundering of drug money, including, but not limited to: wire transfer receipts, bank deposit slips, bank withdraw slips, money order receipts, records detailing the purchase of property, items which show control of real property placed in nominee names such as utility payment records, property tax payment records, key to real property, receipts from payment of insurance premiums paid on residences/vehicle.

5. The fruits and proceeds of the illegal distribution of controlled substances, including, but not limited to: large amounts of currency, financial instruments and other items of value showing the spending of large sums of money made from engaging in the illegal distribution of controlled substances, or other illegal activities.

6. Any digital device used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized, and forensic copies thereof.

a.  As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

7.  Items which tend to show dominion and control of the property searched, including, but not limited to, utility bills, telephone bills, correspondence, rental agreements, property tax payment records, receipt from the payment of insurance premiums on the residence, photographs, and other identification documents.